FIRST NAT. BANK v. O. BALLARD, SURVIVING PARTNER, ETC.

1. CONTRACT CONSTITUTING PARTNERSHIP AS TO CREDITORS.

A contract whereby B agreed to furnish money and indorse to an unlimited amount for a firm of contractors, for the purpose of assisting in the construction of a railroad, in which contract it is agreed that B is to have a portion of the net profits, but is expressly stated that he is not a partner, constitutes a partnership as to third persons without knowledge of the terms of the contract, who loaned money upon the notes of the contractors endorsed by B., during the existence of the contract. Woods. v. Vallette, 7 Ohio St., 172, approved and followed.

2. SUPREME COURT DECISIONS DISTINGUISHED.

The rule laid down in Woods v. Vallette, *supra*, that a contract between parties to share the net profits of a business, to the carrying on of which they respectively contribute, necessarily makes them partners as to third persons, was not changed or modified by the ruling in Harvey v. Childs, 28 Ohio St., 319, which, on the contrary, was distinguished as being in reference to a single transaction, for which money had been advanced and in which no credit was contemplated.

ERROR to the Court of Common Pleas of Pickaway county.

CHERRINGTON, J.:

The plaintiff in error was plaintiff in the court of common pleas, and it brought its action in that court against Otis Ballard and John R. Long as surviving partners of the late firm of E. P. Buell & Co. John R. Long was not served with process, and the action in the court of common pleas proceeded against Otis Ballard alone.

Bank v. Ballard.

The plaintiff's petition filed in the court of common pleas contained four causes of action. Its first cause of action was founded upon a promissory note for the sum of $641.09, of date April 7, 1893, payable to the order of E. P. Buell & Co., signed by A. Beach as maker, and indorsed by E. P. Buell & Co. Its second cause of action was founded on a promissory note for $683.85, dated April 28, 1893, payable to the order of "myself," signed by J. C. Harper as maker, and indorsed by J. C. Harper, E. P. Buell & Co., and J. R. Long. Its third cause of action was founded on a promissory note for the sum of $3,656.30, dated June 16, 1893, payable to the order of O. Ballard, cashier, and signed by E. P. Buell & Co. Its fourth cause of action was founded on a promissory note for the sum of $469.95, dated July 18, 1893, payable to the order of O. Ballard, cashier, and signed by E. P. Buell & Co.

Each cause of action in the plaintiff's petition contained averments charging that Otis Ballard and John R. Long were members of the firm of E. P. Buell & Co. at the time the notes mentioned and the indorsements were made, as set forth in said several causes of action.

Otis Ballard filed an answer denying in substance that he was the surviving partner of the late firm of E. P. Buell & Co.; that at the time the notes and indorsements upon which the plaintiff brought its suit were made that he was a member of said firm of E. P. Buell & Co.; denied that he ever was a partner in said firm, or that he ever had any interest whatever therein as such partner; he denied that he was indebted to the plaintiff in the sums set forth in the several causes of action stated in its petition.

At the October term of the court of common pleas of Pickaway county, a jury being waived, the case was submitted to the court upon the pleadings and the evidence. The court of common pleas found in favor of the defendant, Otis Ballard, and judgment was entered in said court accordingly. The plaintiff filed its motion for a new trial, which was overruled, and it took a bill of exceptions and filed a petition in error, together with said bill of exceptions in this court, praying for a reversal of the judgment of the common pleas court.

The petition in error assigns several different grounds of error, but the only one which is insisted upon is, that the court of common pleas erred in its finding and judgment, and said finding and judgment is against the evidence and the manifest weight thereof.

The real issue made and tried in the common pleas court was whether Otis Ballard was a member of the firm of E. P. Buell & Co. at the time the notes and indorsements were made upon which the plaintiff brought its suit.

It appears from the bill of exceptions that originally the firm of E. P. Buell & Co. was composed of E .P. Buell and John R. Long; that E. P. Buell died about August, 1893.

The plaintiff, in order to show that Otis Ballard was a member of the firm of E. P. Buell & Co. at the time the obligations sued upon were made, offered to prove that a written contract was entered into between the original firm of E. P. Buell & Co. and Otis Ballard and one J. A. Hawkes. The plaintiff was not able to produce the original contract between the parties. It, however, took the deposition of John G. Reeves and John R. Long, who both testified that they were well acquainted with the handwriting of E. P. Buell & Co., Otis Ballard and J. A. Hawkes; that they had each had business transactions with them and had seen them write their names frequently, and that they had in their

possession a contract with the names of these parties appended to it; that they had made a copy from said contract, which copy they had compared with the original and found it to be a true copy. This copy was retained by Mr. Reeves and the original was turned over by Long to one J. C. Harper, who had been appointed receiver of E. P. Buell & Co. after the death of E. P. Buell. At the time Reeves' deposition was taken he refused to attach the copy which he had in his possession to his deposition, but the notary who took his deposition made a copy from the copy in Reeves' possession, which it was agreed by counsel was a true copy of the copy in Reeves' possession. J. C. Harper denied upon the trial of the case that he had ever seen the contract in question or had any knowledge of it.

This copy was admitted in evidence by the court of common pleas over the objection of defendant, and the defendant now insists that the lower court erred in admitting it.

Whether the court of common pleas erred in the admission of this copy or not, or whether it erred in finding that the plaintiff had used due diligence to discover the original contract before resorting to secondary evidence, we are not called upon to determine, for the question is not properly raised before us in this court. We must assume, however, that the court did not err in these respects.

This contract which the plaintiff offered in evidence was dated April 2, 1892. It is said in argument that the execution and delivery of this contract was denied by defendant Ballard. We do not think, however, taht the evidence shows that Ballard made an unqualified denial of this contract. He said, "I have no recollection, no knowledge of such a contract."

As we have already seen Reeves and Long testified positively that they saw the original contract, and that the signatures of E. P. Buell & Co., Otis Ballard and J. A. Hawkes were signed to it, and that they were well acquainted with the signatures of these parties. Ballard says that a contract was entered into between E. P. Buell & Co., James Ballard and himself, September 18, 1889, which contract he produced and offered in evidence. This contract in some respects is very much like the one offered in evidence by the plaintiff. Ballard says that shortly after the contract of September 18, 1889, was entered into, a new contract, which was substantially the same as the first one, with the exception that the name of J. A. Hawkes was added thereto, was made; that this contract was left in the possession of Hawkes. It was not produced upon the trial, and Ballard claimed that he did not know where it was.

One of the recitals contained in the contract of April 2, 1892, is to the effect that $1,000.00 had that day been advanced by Otis Ballard and James A. Hawkes to E. P. Buell & Co. Ballard testified that he and Hawkes did advance to E. P. Buell & Co. $1,000.00 on that day. There was further evidence offered by the plaintiff of admissions made by Ballard of the existence of a contract between E. P. Buell & Co., J. A. Hawkes and himself, in which he and Hawkes were to have a share of the profits, but not to be liable for any of the losses. The evidence shows that when these conversations were had with Ballard or with Mr. Faurot in the presence of Ballard, that the name of James Ballard was not mentioned; that the persons who were spoken of as being members of the firm of E. P. Buell & Co. were E. P. Buell, John R. Long, J. A. Hawkes and Otis Ballard.

After having carefully examined all of the evidence bearing upon this question, we are clearly of the opinion that the defendant, Ballard, executed the contract of date April 2, 1892.

We have, then, in this case two contracts, one proven and the other admitted, and the construction of these two contracts must determine the question whether Otis Ballard was a member of the firm of E. P. Buell, & Co. or not.

It is not claimed that they were partners as between themselves, but that they were such as to third persons who dealt with them.

The contract of 1892, among other things, recites that E. P. Buell and J. R. Long, doing business under the name of E. P. Buell & Co., have a contract for and are now building the L. & H. Railway Co., with certain branches thereto, and that the capital stock and mortgage bonds of said company, amounting to $1,500,000.00 each, have been deposited with O. Ballard, of the First National Bank of Circleville, Ohio, as trustee for said E. P. Buell & Co. and said railway company; that said Buell & Co. have leases and options on certain coal, oil and iron lands; that said Buell & Co. have contracts with the Standard Investment Company, of New York, for the sale of the bonds of the railway company on completion of the road, in sections of five miles each, and also for the sale of the bonds of the coal company. The contract then proceeds as follows:

"Whereas, E. P. Buell & Co. have put into the construction of said railway and for cash expended in the coal company a large amount of money, which has been furnished by themselves and their friends, Otis Ballard and James A. Hawkes.

"Now, therefore, in consideration of advances heretofore made and for one thousand ($1,000) dollars made this day by Otis Ballard and James A. Hawkes, of Circleville, Ohio, we, E. P. Buell & Co., agree and do assign to Otis Ballard and James A. Hawkes a full one-half (½) interest in all of the net profits arising out of the construction of said railway and one-half (½) of all the net profits arising from the coal, iron and oil company, without any individual liability of said Otis Ballard and Jas. A. Hawkes, who expressly disclaim any liability in and for debt.

"The division of profits shall be settled in manner and form to-wit: After first deducting the actual cost of construction of said railway, and the cost of opening and preparing for development the land of the coal company and paying the options on the said lands, the net profits shall be equally divided, one-half (½) to E. P. Buell & Co., and one-half (½) to said Otis Ballard and James A. Hawkes or their legal representatives.

"The division of the profits above referred to shall be in cash, lands, bonds or stocks, as contemplated in the contracts with the Standard Investment Company of New York."

The contract of September 18, 1889, among other things, recites that, for the consideration hereinafter named, E. P. Buell & Co. have given to James Ballard and Otis Ballard $15,000.00 of the first mortgage bonds of the L. & H. Railway Company, and it authorizes Otis Ballard, the trustee of E. P. Buell & Co. and said railway company, to withhold from the first installment of said bonds to be delivered to said E. P. Buell & Co. $15,000.00 of the same for said James and Otis Ballard.

Then follows this clause: "And as a further inducement for the said consideration hereinafter named, said E. P. Buell & Co. have agreed, and do hereby agree to give to said party of the second part one-fourth (¼) part of the net profits they may gain or make in the execution of the said contract with said railway company for the construction of said

railroad (which they estimate will be not less than $400,000.00), but this delivery of the said one-fourth of the net profits made in the construction of said road is not to constitute the said party of the second part a partner in the said contract. The said $15,000.00 of bonds which, by the terms of this contract, are to be delivered to said party of the second part, and are to be theirs absolutely, are to be taken as a portion or part of the one-fourth of the net profits of the execution of said premises."

The contract then provides for a division of the successive installments of bonds between the parties to the contract, and authorizes O Ballard, trustee, to deliver to the party of the second part "his proportionate share of said bonds, such share being the one-fourth part of said profits as said E. P. Buell & Co. shall deem to be within the limits of said one-fourth part of the net profits of the building said road so far as the same may be then constructed."

Then follows this clause: "In consideration of the foregoing, and for which the said E. P. Buell & Co. makes this contract, the said party of the second part agrees and binds himself to indorse for said E. P. Buell & Co. is to indorse a promissory note for said E. P. Buell & Co., the following of which is a copy."

Upon reading this paragraph it is evident that the word "and" has been omitted, and we think it should be read in so that it would read as follows: "The said party of the second part agrees and binds himself to indorse for said E. P. Buell & Co., and is to indorse a promissory note," etc.

The contract then contains a copy of a promissory note for $8,100, of date September 18, 1889, signed by E. P. Buell & Co., and it further recites that Buell & Co. were to give a chattel mortgage upon an engine and certain cars, but it does not provide to whom the mortgage shall be given, or state, except by inference, what it is to secure. The remaining part of the contract relates to the division of the profits.

The defendant, Ballard, also offered in evidence a contract between E. P. Buell & Co. and the L. & H. Railway Company, by which he, Ballard, was appointed trustee for said Buell & Co. and said railway company. There is a receipt on this contract showing that certain stock and mortgage bonds of the railway company had been placed in the hands of Ballard.

The evidence shows that at the time Ballard and Hawkes made these contracts that Hawkes was the president and Ballard the cashier of the First National Bank of Circleville, Ohio, and that they were both directors of said bank.

Both of these contracts provide that the defendant, Ballard, is to have a share of the net profits that may be made out of the contract for the construction of the Lancaster & Hamden Railway, and both contracts provide that nothing in the contracts shall constitute Ballard to be a partner in the firm of E. P. Buell & Co.

It is claimed on behalf of Ballard that he had no interest in the firm of Buell & Co. other than that of a creditor of the firm; that he furnished the firm with money and indorsed for it, and that the contract of 1889, which is the only contract offered in evidence that they now admit, was made for the purpose of securing him as a creditor of that firm; it is claimed that in order to make him a member of the firm of Buell & Co. that it is necessary that it be shown that he contributed something toward the advancement of the interest of the enterprise in which E. P. Buell & Co. were engaged, and that this fact has not been shown. We think dif-

Bank v. Ballard.

ferently, and that by a fair construction of the evidence in this case that it is apparent that Ballard did contract to and did furnish something valuable toward the advancement of the enterprise in which E. P. Buell & Co. were engaged. Buell & Co. were engaged in building a railroad. It was necessary for them to have money and credit. Ballard and Hawkes were directors of the plaintiff, one the cashier and the other its ᴬresident. And it is evident that these contracts, and especially the one of 1889, were entered into by these parties, by reason of the fact that Ballard was in a position where they believed that he could accommodate the firm of Buell & Co., by furnishing it cash and indorsing its paper. As we have seen by the contract of 1889, Ballard agreed to not only indorse the note of $8,100, but to indorse for the firm of Buell & Co. generally, and it will be remembered that the contract of 1892 recites the fact of money having been heretofore advanced by Otis Ballard and J. A. Hawkes, and money advanced on that day by them. It seems to us that it is immaterial whether they placed their money directly in the firm or whether they contributed to the enterprise by indorsing for the firm. The act was the same; the money was furnished by Ballard and Hawkes to be used in that enterprise, in whichever way it was raised.

We think that the evidence shows, and that these contracts show, that the defendant, Ballard, has clearly brought himself within the rule laid down by the Supreme Court in Wood v. Vallette, 7 Ohio St., 172. The third syllabus of that case we think is decisive of this case. It is as follows:

"That a contract between parties to share in the net profits of a business, to the carrying on of which they respectively contribute, necessarily makes them partners as to third persons dealing with the firm."

We have already stated that the evidence shows that Ballard contributed cash, and that he agreed to indorse for the firm for an unlimited amount, to assist it in carrying out its enterprise, and that he was to receive a share of the profits of the firm for so doing. This, we think, under the authority quoted, makes him a partner as to third persons dealing with the firm. The case of Wood v. Vallette, *supra,* has not been reversed or modified."

The case of Harvey v. Childs, 28 Ohio St., 319, has been referred to, and it was claimed, on behalf of Ballard's counsel, that this case changed the rule adopted by the Supreme Court in Wood v. Vallette, *supra.* We do not think so, and, in fact, the Supreme Court, in Harvey v. Childs, disclaim any intention to reverse or modify the case of Wood v. Vallette, and undertook to distinguish that case from the case of Wood v. Vallette. The case of Harvey v. Childs was, as the court remarked, in reference to a single transaction for which the money had been advanced and where no credit was contemplated. And it then remarked, "in such case there is no ground for the implied authority to incur debts such as exists in regard to a general trading business." In this case the contracts themselves show that the firm of E. P. Buell & Co. were engaged in the building of a railway; that it was necessary to raise money for that purpose; that it was a continuing enterprise and not a single transaction, and that the making of the contracts themselves not only contemplated the obtaining of credit by the firm of Buell & Co., but it appears, from the contract of 1889, that that was one of the purposes and the main purpose for which the contract was entered into. So that we do not think that Harvey v. Childs, *supra,* is applicable to the case under consideration.

The judgment of the court of common pleas will be reversed and the cause remanded for a new trial.

*Clarence Curtain* and *Albert Douglas,* for plaintiff in error.

*Smith & Morris, Abernethy & Folsom* and *H. Bodman,* for defendant in error.